IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 13, 2011

**ROBERT JASON BURGESS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 11-CR1-A, 11-CR1-B  Robert Crigler, Judge**

_____

**No. M2011-01324-CCA-R3-PC- Filed July 31, 2012**

_____

The Petitioner, Robert Jason Burgess, appeals from the Marshall County Circuit Court's denial of post-conviction relief from his convictions for two counts of rape and two counts of possession with intent to sell a controlled substance, for which he is serving an effective twenty-six-year sentence. On appeal, the Petitioner contends that he did not receive the effective assistance of counsel. He also contends that the trial court erred in treating his letters as a petition for post-conviction relief. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Emerterio "Terry" R. Hernando, Lewisburg, Tennessee, for the appellant, Robert Jason Burgess.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Chuck Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was charged in indictment number 10-CR-74 with eight felony drug offenses and two misdemeanor drug offenses. He was charged in indictment number 10-CR-76 with thirteen felony sexual offenses. He was represented by a retained attorney in the sexual offenses case and by the public defender's office in the drug case. In a settlement agreement that disposed of all the charges, he pled guilty on November 17, 2010, to two counts of rape, a Class B felony, and two counts of sale of a Schedule III controlled

substance, a Class D felony.  See T.C.A. §§ 39-13-503 (2010) (rape), 39-17-417(a)(3) (sale of a controlled substance).  Pursuant to the agreement, the Petitioner received ten-year sentences for each of the rape convictions and three-year sentences for each of the drug convictions, all to be served consecutively, for an effective twenty-six-year sentence.

According to the stipulated facts at the guilty plea hearing:

> [T]he drug cases, counts 2 and 5, on 10CR74 are Drug Task Force cases.  They are controlled buys in which all of the safety precautions and standard operating procedure [were] followed.
>
> As Your Honor is well familiar, as well as [defense counsel], as is the Public Defender's [O]ffice, that on the 26th day of February under those circumstances the defendant did sell hydrocodone, a Schedule III controlled substance, to an undercover confidential informant.
>
> Then again on the 27th day of February did likewise.
>
> As to the rape charges, count 2 of 10CR76, the defendant did accomplish sexual penetration without the consent of the victim and he did it on a day between December 1st of 2009 and the 15th day of December, 2009, accomplished this; and on another day did likewise do the same.

Defense counsel acknowledged that the defense stipulated that a sufficient factual basis existed to support the pleas.

The Petitioner wrote to one of the attorneys in the drug cases on December 8 and 10, 2010, and expressed his desire to "take [the drug case] back to court" and have it considered separately from the rape case.  He said he wanted to challenge the drug convictions "[i]f it wouldn't mess with my rape plea."  The Petitioner complained in his letters that he and his co-defendant did not receive the same sentences for the drug offenses.  He stated that he regretted signing the plea agreement in the drug case.  He asked his attorney in the drug case to "[p]ut us on the closest [d]ocket."  A motion to withdraw the guilty pleas was not filed. See Tenn. R. Crim. P. 32(f) (withdrawal of guilty plea).   He wrote to his attorney in the sexual offenses case on December 10, 2010, and expressed his wishes regarding the drug case.

The Petitioner also wrote to the trial court. In a letter dated December 15, 2010, the Petitioner's attorney in the drug case advised him that the trial court had determined that the Petitioner's letter "was essentially a Post-Conviction action against [the public defender's] office" and that the court had appointed counsel to assist the Petitioner in the matter. The attorney advised the Petitioner to discuss any issues with his newly appointed attorney and provided the attorney's name and address. The record reflects, however, that counsel was appointed on January 5, 2011. Through counsel, the Petitioner filed petitions for post-conviction relief on February 25, 2011.

The petition in the drug case alleged that the Petitioner did not receive the effective assistance of counsel. He alleged that the assistant public defenders did not investigate or develop a defense in the drug case, that his attorneys in the drug and sexual offenses cases together continued "badgering" him until he accepted the settlement agreement, and that the public defender's office failed to file a motion to withdraw his guilty pleas in the drug case.

The petition in the sexual offenses case alleged that the Petitioner's guilty pleas were not knowingly, voluntarily, and intelligently made and that he did not receive the effective assistance of counsel because counsel failed to investigate favorable witnesses, erroneously advised him that the fourteen-year-old victim could not testify, and failed to file a motion to withdraw his guilty pleas. The State moved to consolidate the two petitions. Although the court's ruling on the motion does not appear in the record, post-conviction counsel stated at the post-conviction hearing that he had no objection. The trial court conducted a single hearing on both post-conviction petitions and issued a single order addressing the allegations.

At the hearing, the Petitioner testified that he wrote letters to the trial court complaining about his attorneys in both cases. He said that his attorneys in both cases pressured him to accept the plea offer. He said the three attorneys had him in a back room for thirty to forty-five minutes and eventually wore him down. He said the attorneys told him he was facing the possibility of a longer sentence if he took his cases to trial.

The Petitioner testified that he understood the definition of perjury. He stated that he lied in his sworn testimony at the plea hearing when he said he was satisfied with his attorneys' services. He acknowledged that no one threatened him to accept the plea agreement but said he was pressured by the attorneys. He said he lied when he told the trial court that the guilty pleas were his free and voluntary decisions. He said he accepted the plea agreement even though he still wanted to take his cases to trial. He said he "probably should have" let the court know about his dissatisfaction with his attorneys and requested new attorneys. He understood that the plea agreement was a combined disposition of the drug case and the sexual offenses case and that there would be no plea bargain if it were not

accepted in its totality. The Petitioner agreed that he had ten prior convictions but noted that none were for felonies.

**Drug Case**

Regarding the drug case, the Petitioner testified that the assistant public defenders who represented him never developed a trial strategy and merely advised him of plea offers. He said he "pretty much told them" he did not touch any drugs or money and never conspired to sell or deliver any drugs. He said he told them from the beginning that he wanted to take the case to trial. He wanted his attorneys to pursue a defense based upon the fact that his co-defendant's voice, not his, was on the audio recordings of the drug sales. He said that one of his attorneys told him he would not "beat" the conspiracy charge in the drug case.

The Petitioner testified that his attorneys for both cases pressured him to accept the plea offer. He said the three attorneys had him in a back room for thirty to forty-five minutes. He said the attorneys told him he was facing the possibility of a longer sentence if he took his cases to trial.

The Petitioner testified that he was dissatisfied that his co-defendant received a lesser sentence than he did. He said that a week after he pled guilty, he wrote to his attorneys in the drug case and told them he wanted to withdraw his guilty plea and take his case to trial. He said he wrote letters to the trial court and his attorney in the sex offenses case, as well. He said that one of the attorneys in the drug case advised him by letter that he had thirty days to file the motion to withdraw the plea but that it might jeopardize the disposition of the sexual offenses case. He said he wrote another letter to the attorney and told him to file the motion. He said he received a letter a couple of weeks later, in which the attorney told him "that [the trial court] had filed the post conviction on him and [the public defender's office]" and had appointed counsel. He said the attorney with whom he corresponded never filed the motion to withdraw the plea. He identified the letters, which were received as exhibits.

The Petitioner testified that he told one of the attorneys in the drug case to interview a witness who would testify that his co-defendant was the person trying to sell drugs and that the Petitioner did not sell drugs. He said the witness was never contacted. The Petitioner acknowledged that his post-conviction attorney told him that he had contacted the witness but that the witness said he had nothing good or bad to say about the Petitioner's cases.

The Petitioner testified that one of the attorneys in the drug case met with him in September 2010 about the plea offer. He said the attorney came to see him a month or two before a court date and played the State's audio recordings for him. He acknowledged that his voice was on the recordings but stated he did not mention drugs or money. He said that

both attorneys in the drug case met with him about a month before November 17, 2010, but that they did not discuss trial strategy. He said he told his attorneys to take the case to trial. He acknowledged meeting with his attorneys on court dates and about three times at the jail. He said they mailed him the discovery materials.

Bedford County Sheriff's Deputy Tim Miller testified that the Petitioner sold drugs to him during an undercover operation. He said the Petitioner lied when he testified that he never touched the drugs.

One of the assistant public defenders who represented the Petitioner in the drug case testified that he did not contact the Petitioner's cousin because there was no need. He said that after he received a letter from the Petitioner requesting to withdraw the guilty plea, he wrote to the Petitioner to explain the consequences. He said that he received a second letter and that he brought it to the court's attention on the next regular circuit court date. He said the court date was within the thirty days allowed for filing a motion to withdraw a guilty plea. He said the trial court received a letter from the Petitioner asking to withdraw the plea, as well. He said, "[T]he judge stated he was taking it as a post conviction action and removed us from the case and appointed [post-conviction counsel]."

Regarding the plea offer, trial counsel testified that he did not think he browbeat the Petitioner into accepting it. He said they discussed the case for some time and thought there had been ten court appearances for the drug case alone. He said that on November 17, 2010, his co-counsel in the drug case, the Petitioner's attorney in the sexual offenses case, the Petitioner, and he met in the jury room for forty-five minutes to an hour to discuss the cases. He said they advised the Petitioner of the possible sentences he would face if tried and convicted of each offense. He did not notice any error in the advice from the attorney in the sexual offenses case. He said they explained that the Petitioner might receive a shorter sentence for the drug case if it were handled separately but that the Petitioner was likely to receive a longer sentence for the sexual offenses. He said the Petitioner wanted to go to trial but listened to the attorneys' reasoning. He said the Petitioner had no reason to feel pressured and did not appear to feel that way. He said the State's initial offer was thirty years, consisting of twenty-four years for the sexual offenses and six years for the drug offenses.

Trial counsel acknowledged receiving a letter dated December 10, 2010, in which the Petitioner expressed his desire to withdraw his guilty plea. He acknowledged the public defender's office did not file a motion on the Petitioner's behalf. He agreed there was still time to file a motion when he received the letter. He said he sent the Petitioner a reply, but he did not think they discussed the matter again.

Trial counsel testified that he and co-counsel reviewed the evidence and the discovery. He did not recall the Petitioner's giving them a list of witnesses. He said the only time the Petitioner's cousin was mentioned was as the owner of the drugs involved in the Petitioner's drug charges.

Co-counsel testified that attorneys from the public defender's office met with the Petitioner about ten times on court dates. He said they also met with the Petitioner at the jail. He said they discussed the facts of the case with the Petitioner many times. He said the public defender's investigator played the audio recordings for the Petitioner.

Co-counsel testified that he and trial counsel advised the Petitioner that they should wait to see what happened with the sexual offenses case and use the drug case as a bargaining tool. He said the sexual offenses case was far more serious than the drug case. He said they coordinated their efforts with the Petitioner's attorney in the sexual offenses case. He said the State had a solid drug case against the Petitioner. He noted, as well, that the Petitioner was charged with about ten to thirteen sexual offenses, including multiple counts of rape. He said the Petitioner admitted to penetration but claimed it was consensual. He said they explained to the Petitioner that a jury would not be receptive to a consent defense.

Co-counsel denied that he and the other attorneys "browbeat" or pressured the Petitioner into accepting the plea agreement. He said the public defender's office respected a defendant's right to a jury trial if the defendant wanted one. He said, however, that the public defender's office was candid with a defendant if they thought the defendant was making a mistake. He said the Defendant received a good deal by accepting the plea bargain. He said that the Petitioner's attorney in the sexual offenses case deserved the credit for obtaining the favorable deal.

## Sexual Offenses Case

Regarding the sexual offenses case, the Petitioner testified that he told his attorney to take his case to trial. He said trial counsel never interviewed his cousin, who lived in his household when the offenses were alleged to have occurred, nor did counsel interview the victim. He said their testimony would have been favorable to the defense. He said that trial counsel, along with the attorneys in the drug case, told him that his ex-wife wanted him "put under the jail" for the sexual offenses. He said they also told him that the judge and jurors probably had children or grandchildren and would not be inclined to believe he was not guilty. He said they told him he was facing a sentence of twenty-four years at 100% but that his ex-wife had agreed to ten-year sentences. He said that based upon the advice, he felt pressured to accept the settlement offer disposing of both cases.

The Petitioner testified that he met with his attorney in the sex offenses case at the attorney's office but that once he was arrested for the drug case, the attorney never visited him at the jail. He said he met with the attorney about four times before he accepted the plea offer. He said he wrote trial counsel numerous letters asking questions about his case but that counsel wrote him one to four letters. He identified two letters he received from trial counsel that predated the guilty plea hearing. He said the letters were consistent with the advice the attorneys gave him in the back room on the day of the plea hearing. He said that counsel told him he could face life in prison and "pretty much . . . call[ed] him a complete idiot" in the letters. He said the attorney told him he faced a sentence of forty to one hundred years if convicted at trial.

The attorney's letters contained a detailed analysis of the case and addressed questions and concerns the Petitioner apparently had raised. A letter dated November 8, 2010 states, in pertinent part,

> With regard to all of the "character" witnesses that you have provided to me, those are not the type of witnesses that you use at trial. . . . [W]hat you are asking me to do is to put "character witnesses" on the stand to verify the likelihood that your testimony is true. But I would ask you, do you really want me to put witnesses on the stand to say that you told the truth about giving your son a blowjob and him reciprocating by giving you one? Do you not see the idiocy in that? Really?!?

He also complained that trial counsel advised him that the fourteen-year-old victim could not testify. The pertinent portion of the letter states, "[E]ven if [the victim] wanted to testify to a jury that he was 'okay with [the sex acts],' neither the District Attorney nor the Judge is going to permit that testimony to be given to the Jury. 'Consent' cannot be given by a 14 year old victim." The letter also noted that the State's evidence included the Petitioner's confession and text messages and photographs. The letter also stated that although trial counsel believed that an outstanding plea offer was the better course, he would take the case to trial if the Petitioner desired.

The Petitioner wrote letters to his attorney in the sex offenses case on November 17, 2010, regarding family matters. The Petitioner also expressed his gratitude for trial counsel's services. He wrote to the attorney again on December 10, 2010, mentioning his dissatisfaction with the resolution of the drug case because his co-defendant received a shorter sentence and stating he had written to one of the attorneys in the drug case about "going back to court." He said he wanted "to take an open plea" and have the trial court determine the sentence. He acknowledged that the plea agreement involved a joint

disposition of the drug case and the sexual offenses case but stated his belief that they should have been considered separately. He wrote, "I hope it doesn't mess with the sentence I got on the rape case. If it does. O'well. [sic] I regret signing the [p]lea on the drug charge." The Petitioner again wrote to his attorney in the sexual offenses case on December 19, 2010, stating his assumption that the trial court had granted "the Motion to pull my Guilty Plea on my drug case." He stated he had written to the trial court asking to withdraw the plea in the sexual offenses case. He said he wanted to accept an "open plea" and have the trial court sentence him. He wanted counsel to continue representing him in the sexual offenses case, but he disparaged the public defender's office regarding the drug case. He wanted counsel to have the victim testify, stating, "He can help me to get way less time. That the 20 yrs. I got. [sic]" He also stated

> So, [H]opefully, [i]t's not to[o] late to file the Motion to pull the Guilty Plea. I prayed every night after I sent [the trial court and one of the attorneys in the drug case] my [letters] on pulling the [p]lea in the drug case. And it worked. Now I will [p]ray over getting this [r]ape [p]lea pulled. You said it was my [l]ife. So, [y]ou are right. So, I want to take a chance and see what [happens].

The Petitioner testified that he wanted to withdraw the guilty pleas in the sexual offenses case because he should have been charged with statutory rape by an authority figure, rather than rape. He said the sentence for rape was greater than for statutory rape. He claimed, "I told them that for 10 months."

Lewisburg Police Detective Scott Braden testified that he interviewed the victim, the victim's mother, and the Petitioner's cousin shortly before the plea agreement was reached. He said the victim's statement of the facts remained the same. He said the Petitioner's cousin told him that he had nothing to say that would have been of any interest or benefit to the Petitioner and that in fact, it might hurt his case.

Trial counsel testified that the Petitioner's eighty-six-year-old aunt retained him to represent the Petitioner in the sexual offenses case. He said he was concerned about the exposure the Petitioner faced from the charges, which included eight counts of rape, one count of sexual battery by an authority figure, one count of incest, and three counts of electronic communication with a minor for the purpose of sexual arousal or gratification. He said the rape and sexual battery charges involved the Petitioner's fourteen-year-old son. He said he was "not impressed with" two of the electronic communication offenses but noted that the third involved the Petitioner's sending a lewd photograph of himself to his sixteen-year-old daughter. He said the State had written confessions in which the Petitioner admitted

oral penetration involving his son. He said he did not pursue bond after the Petitioner was arrested in the drug case because the Petitioner had written him a letter threatening to kill the prosecutor if he were released and because counsel "couldn't trust him out on bond" after the drug charges occurred.

Trial counsel said neither he nor his office had a practice of browbeating defendants to accept plea offers. He said there was no "high pressure sales pitch" at the meeting on November 17, 2010, and noted numerous additional meetings with the Petitioner before November 17. He stated that the State's first offer for the sexual offenses case was forty years at 100% service and that the second offer was for thirty years to settle both cases, with a twenty-four-year sentence for the sexual offenses and six years for the drug case. The final offer was twenty-six years to settle both cases, with two consecutive ten-year sentences for rape and two consecutive three-year sentences for the drug offenses. He said that he thought the third plea offer was better than the forty-year offer, that he informed the Petitioner, and that the Petitioner appeared to understand. He said the plea offer would not have expired if the Petitioner did not accept it by November 17, 2010. He noted that a trial date had not been set.

Trial counsel testified that he did not interview the Petitioner's cousin. He said the Petitioner wanted his cousin to testify that the Petitioner had not sexually abused the cousin's children but noted it was not relevant to the Petitioner's charges. He stated that he learned after police detectives reinterviewed the witnesses that the cousin did not have favorable defense testimony. He said that based upon information he received from the prosecution, he was confident the victim would testify in accord with his previous statements. He said he did not interview the victim because he did not think it would be beneficial to the defense or the victim.

Trial counsel testified that the Petitioner wrote him a letter with the same date as the guilty plea hearing, in which the Petitioner thanked him for his work on the sexual offenses case and asked him to help the Petitioner's aunt with legal matters. He identified the Petitioner's November 17, 2010 and December 10, 2010 letters. He received the latter on December 13. He identified a December 19, 2010 letter, which was received more than thirty days after the guilty plea hearing. He said it was in this letter that the Petitioner first mentioned withdrawing his guilty plea in the sexual offenses case. He said the Petitioner continued to write to him about once a week until April 11, 2011.

Trial counsel said he would have taken the Petitioner's case to trial if the Petitioner had chosen. He thought the case would be "like shooting fish in a barrel" for the State. He said the Petitioner faced "some horrendous time" if convicted.

Trial counsel acknowledged his letter stating that a fourteen-year-old could not legally consent to sexual activity with the fourteen-year-old's father and said he thought this was an accurate legal statement. He said that whether this was an accurate statement of the law, a jury would not view a consent defense favorably. He denied calling the Petitioner an idiot and stated he was pointing out the idiocy of having a witness testify that the Petitioner was truthful, given that the Petitioner had confessed to the offenses. He agreed that the Petitioner wanted the indictment amended to statutory rape. He said he had no ability as a defense attorney to amend an indictment.

**Trial Court's Ruling**

After receiving the proof, the trial court held that the Petitioner did not prove that the attorneys in either case failed to provide the effective assistance of counsel. With regard to the failure to file a motion to withdraw the guilty plea, the court found:

> Soon after his plea, [the Petitioner] wrote complaining about his attorneys and wanting to withdraw his plea.
>
> It put the Public Defender's [O]ffice in an untenable position, to either follow their client's wishes and file a motion that they didn't think had any merit to it and accuse themselves of ineffective assistance, which they didn't believe to be true, or to do nothing. That is why the Court had to appoint [post-conviction counsel].

The court also held that the Petitioner failed to prove that his pleas were not freely and voluntarily given. The court noted that the Petitioner failed to call his cousin and the victim of the sexual offenses as witnesses at the post-conviction hearing. In its written order denying relief, the court found that the Petitioner's testimony about being pressured into accepting the plea bargain was not credible and it specifically accredited the attorneys' testimony.

**I**

On appeal, the Petitioner contends that his counsel in both cases provided ineffective assistance. The State contends that the trial court correctly determined that the Petitioner failed to prove this claim. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we

-10-

are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir.1974), and United States v. DeCoster, 487 F.2d 1197, 1202–04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528

(Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

**Trial Counsel in the Drug Case**

The Petitioner contends that his counsel in the drug case were ineffective because they failed to investigate and prepare for trial, pressured him into accepting the plea offer, and failed to file a motion to withdraw his guilty plea. The assistant district public defenders testified that they investigated and prepared for trial and would have gone to trial if the Petitioner had chosen. One of the attorneys testified that they did not speak with the Petitioner's cousin because the cousin's only connection to the case was that the Petitioner and the co-defendant were driving the cousin's truck when they committed the offenses. The Petitioner's cousin did not testify at the hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Counsel testified that they did not pressure the Petitioner into accepting the plea offer. The trial court accredited the testimony of counsel and found the Petitioner's testimony not credible. The record does not preponderate against the trial court's factual determinations about counsel's investigation and preparedness. The record likewise does not preponderate against the court's factual determinations that the Petitioner's counsel did not pressure him to accept the plea offer.

Regarding the Petitioner's claim that counsel in the drug case failed to provide effective assistance because they failed to file a motion to withdraw his guilty plea, we note that the trial court's findings do not specifically address this as a question of the effectiveness of counsel. Within the time allowed to file a motion to withdraw a guilty plea, the Petitioner communicated his desire to withdraw the pleas in the drug case if it would not affect the sexual offenses case. The attorney wrote the Petitioner a letter explaining that withdrawing the plea in the drug case placed the disposition of the sexual offenses case in jeopardy. Trial counsel admitted he took no further action on the Petitioner's behalf. Within the time period for filing a motion to withdraw the plea, counsel should have filed the motion or affirmed that the Petitioner no longer wished to pursue withdrawal of the plea.

The record does not, however, support a finding that the Petitioner was prejudiced. In addressing the question of whether the Petitioner freely and voluntarily accepted the plea offer, the trial court said:

> The [Petitioner]'s testimony at the post-conviction hearing that
> his attorneys coerced and pressured him into pleading guilty is

-12-

not credible. In fact, they properly advised him about the ramifications of rejecting the proposed settlement such as the likelihood of conviction and longer sentences. . . . The [Petitioner] may not have liked the situation that he found himself in but he himself put himself in that situation.

. . .

The post-conviction court finds that the guilty pleas were made voluntarily, understandingly and knowingly. . . . The Court accredits counsels' testimony in all respects and does not find the [Petitioner]'s testimony credible in part because he himself admitted committing perjury and he was less than forthright about the extent of his criminal record.

Had counsel filed a motion to withdraw the guilty plea, the Petitioner would have had to establish that he should be allowed to withdraw the pleas to correct manifest injustice. Tenn. R. Crim. P. 32(f)(2). The trial court discredited the Petitioner's testimony and rejected the claim he pled guilty because his attorneys coerced him into doing so. Because the trial court rejected the factual premise upon which the Petitioner contends he sought to withdraw the pleas, he has not shown that he was prejudiced by trial counsel's actions. He is not entitled to relief on this basis.

## Trial Counsel in the Sexual Offenses Case

The Petitioner contends that trial counsel in the sexual offenses case was likewise ineffective for failing to investigate and prepare for a trial and for pressuring him into accepting the plea agreement. Regarding the investigation and preparation for a trial, counsel testified that he did not interview the Petitioner's cousin because the cousin's testimony that the Petitioner never sexually abused the cousin's children would not have been relevant. He also said he learned that the cousin would not provide favorable testimony. He did not interview the victim because the victim reaffirmed the accusations when further interviews were conducted by the State. Counsel saw no benefit to the Petitioner or the victim from interviewing the victim. Neither the Petitioner's cousin nor the victim testified at the post-conviction hearing. See Black, 794 S.W.2d at 757. The Petitioner failed to show that trial counsel did not adequately investigate and prepare the case and failed to establish prejudice when he failed to present the cousin and the victim as witnesses in the post-conviction proceeding.

Regarding the Petitioner's contention that trial counsel pressured him into accepting the plea offer, counsel testified that he and the other attorneys discussed the realities of the situation with the Petitioner. Although he thought the Petitioner's better course was to plead guilty, he would have taken the case to trial had the Petitioner rejected the plea offer. He reviewed the evidence with the Petitioner and was familiar with the case. The trial court accredited trial counsel's testimony. The evidence does not preponderate against the trial court's factual findings.

Regarding the Petitioner's contention that trial counsel was deficient in failing to file a motion to withdraw the guilty pleas, we note that although the Petitioner told the attorney in the sexual offenses case that he was seeking to withdraw his plea in the drug case, he did not tell the attorney that he wanted to withdraw the plea in the sexual offenses case until after the judgments were final. Had a motion been filed at this point, it would have been dismissed because the court was without jurisdiction to consider its merits.

The Petitioner failed to establish his ineffective assistance claim against his attorney in the sexual offenses case by clear and convincing proof. He is not entitled to relief on this basis.

## II

The Petitioner contends, for the first time on appeal, that the trial court erred in treating his letters to his attorneys and the trial court as a petition for post-conviction relief. The State contends that the issue is waived because it was not raised in the trial court. We conclude that the Petitioner is not entitled to relief.

As we noted, the record contains letters the Petitioner wrote to his attorneys after the guilty pleas. The record does not contain the letter or letters the Petitioner wrote to the trial court after the guilty pleas, although the existence of this written correspondence from the Petitioner is not contested. The record does not reflect the date of the written communication to the court, although a December 15, 2010 letter from one of the attorneys in the drug case advised the Petitioner that the court had received a letter and decided to treat it as a post-conviction matter. This supports a conclusion that the court received a letter from the Petitioner before the judgments were final.

In his testimony, the Petitioner agreed that "this petition started out by [his] writing letter of complaints [sic] addressed [to the trial court.]" After considering the letters to the attorneys and to the court to be in the nature of a post-conviction petition, the court appointed counsel. The Petitioner, through his appointed counsel, filed a post-conviction petition and presented proof at a hearing in support of his claims. The record does not reflect that he

attempted to have the court consider his letters as a timely pro se motion to withdraw his pleas or that he otherwise objected to the nature of the proceedings. Rather, he cast the failure to file a motion to withdraw the guilty pleas as ineffective assistance of counsel by his attorneys.

We acknowledge that this court has considered sua sponte whether a trial court erred in treating a petitioner's motion to withdraw a guilty plea as a petition for post-conviction relief. David Wayne Hearing v. State, No. E2006-00362-CCA-R3-PC, Greene County (Tenn. Crim. App. Dec. 28, 2006). In David Wayne Hearing, the petitioner filed a pro se motion to withdraw his guilty plea. The trial court treated the motion as a petition for post-conviction relief, although its reasons for doing so did not appear in the record. The court appointed counsel, an amended petition was filed, the petitioner presented his claims at an evidentiary hearing, and the trial court denied relief. Although the issue was not raised by the parties, we held that the trial court erred in considering the motion to withdraw the plea as a post-conviction petition. Noting the difference between the required showing of "manifest injustice" for withdrawal of a guilty plea and the burden in a post-conviction proceeding, we remanded the case for an adjudication of the motion to withdraw the pleas. Slip op. at 2; see also Jason Lewis Adams v. State, No. E2001-02765-CCA-R3-PC, Hamilton County, slip op. at 3 (Tenn. Crim. App. May 27, 2003).

In the present case, the Petitioner indicated he wanted to withdraw the pleas in the drug case before the time for filing a motion to withdraw had elapsed. He did not indicate his desire to withdraw the pleas in the sexual offenses case until after that time expired. The Petitioner did not file a pro se motion to withdraw his plea. Rather, he wrote a letter to the court complaining about his attorneys. The record does not support a conclusion that the court erred when it appointed counsel to assist the Petitioner in pursuing post-conviction relief, rather than interpreting the Petitioner's letter complaining about the attorneys as a motion to withdraw the pleas. Furthermore, we note that the Petitioner's signature appears on the formalized post-conviction petition that was filed on February 25, 2001, and his execution of this document was duly verified.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE